Strafford
No. 2002-436

WILLIAM MCNEIR RICHMOND

v.

ANDREW HUTCHINSON

ENVIRONMENTAL SHOWCASE, LTD.

v.

ANDREW HUTCHINSON

Argued: June 18, 2003
Opinion Issued: August 18, 2003

*William McNeir Richmond P.C.*, of Wolfeboro (*William McNeir Richmond* on the brief and orally), for the plaintiffs.

*Bryan W. Clickner*, of Londonderry, by brief and orally, for the defendant.

DUGGAN, J. The plaintiffs, Environmental Showcase, Ltd. (ES) and its chief operating officer, William McNeir Richmond, appeal an order of the Superior Court (*Fauver*, J.). The court awarded liquidated damages to ES' former employee, defendant Andrew Hutchinson, because ES willfully failed to pay his wages, found Richmond personally liable for those wages, and awarded Hutchinson attorney's fees. We affirm.

In December 1999, ES, a "dot com" Internet company, employed Hutchinson and five others. Richmond managed the company's day-to-day operations. ES had a history of borrowing money and began many payroll periods without sufficient funds to pay wages. Richmond was unable to borrow money to make the December 31 payroll. Consequently, Hutchinson never received wages of $3,615.98. Both ES and Richmond concede the validity of Hutchinson's wage claim.

Hutchinson filed claims against ES and Richmond with the New Hampshire Department of Labor (department), seeking both his unpaid wages and liquidated damages against both ES and Richmond. *See* RSA 275:44, IV (1999).

As a result of several proceedings, the department ruled that both ES and Richmond were liable for the unpaid wages. After finding that ES knowingly withheld wages despite having the financial ability to pay, the department ruled that ES was also liable for liquidated damages. These rulings were affirmed by the superior court, which also awarded Hutchinson attorney's fees. The superior court denied a cross-appeal by

Hutchinson on Richmond's personal liability for liquidated damages. Both ES and Richmond have appealed.

ES argues the superior court erred in upholding the department's findings that: (1) ES had the financial ability to pay Hutchinson's wages for purposes of awarding liquidated damages; and (2) ES acted willfully. Richmond argues that the superior court erred in affirming the department's ruling that he is personally liable for wages owed Hutchinson.

On appeal, we will not overturn an agency decision unless "there is an error of law, or when the order is unjust or unreasonable." *Appeal of Young*, 146 N.H. 216, 217 (2001); *see* RSA 541:13 (1997). We will affirm the superior court's factual findings unless they are unsupported by the evidence and we will affirm the superior court's legal rulings unless they are erroneous as a matter of law. *Dow v. Town of Effingham*, 148 N.H. 121, 124 (2002).

We first address ES' argument that the superior court erred when it upheld the department's finding that ES had the financial ability to pay Hutchinson's wages for purposes of awarding liquidated damages.

Under RSA 275:44, IV (1999), "if an employer willfully and without good cause fails to pay an employee wages as required under ... this section, such employer shall be additionally liable to the employee for liquidated damages." We have defined "willfully," in the context of an action for unpaid wages due under employment contracts, "to mean voluntarily, with knowledge of the obligation and despite the financial ability to pay it." *Ives v. Manchester Subaru, Inc.*, 126 N.H. 796, 801 (1985). We noted that a "willful" act did not include "an accident or an act committed on the basis of a mistake of fact." *Id.* Thus, no liquidated damages are available when an "employer's refusal to pay wages is based upon bona fide belief that he is not obligated to pay them." *Id.*

The department found that ES' unsecured interests in assets exceeded the wages owed Hutchinson and thus ES had the financial ability to pay Hutchinson's wages. The superior court affirmed this finding. The record supports the department's findings. When ES ceased operations on December 31, 1999, it possessed in excess of 50,000 "barter dollars" and two computer servers purchased in July 1999 for approximately $13,000. "Barter dollars" allow individuals and businesses to exchange goods and services and are convertible to money. An accounting firm determined the barter dollars, with a minimum exchange rate of $0.40 per barter dollar, had a total value of $20,000. Investors received some of those barter dollars and in January 2000, Richmond directed ES to repay a loan he personally made to ES with 7,400 barter dollars. The computer servers

used to run ES' business were no longer needed when ES ceased operations. That the computer servers had value is evidenced by a secured note made against them in May 2000. Given the availability of these assets, the evidence supports the factual findings that ES had the financial ability to pay Hutchinson's wages.

ES next argues that it did not act "willfully" because it had a bona fide belief that it did not have the financial ability to pay Hutchinson's wages. *See Ives*, 126 N.H. at 801. While ES concedes the validity of the wage claim, it argues that the barter dollars and computer servers were illiquid assets, which supports its alleged belief that it was unable to pay Hutchinson's wages. The record, however, shows that ES and Richmond knew that the barter dollars had value when Hutchinson's wages became due. In January 2000, Richmond directed ES to repay a loan to him with 7,400 barter dollars. ES and Richmond also knew that the computer servers had value when Hutchinson's wages became due. In December 1999, Richmond testified he knew a creditor was trying to attach the computer servers and in May 2000, he secured a note against them. The superior court properly upheld the department's finding that ES did not have a bona fide belief that it did not have the financial ability to pay Hutchinson's wages. *See Ives*, 126 N.H. at 801.

Finally, we consider whether the superior court erred in upholding the department's ruling that Richmond is personally liable for Hutchinson's wages. An "officer[] of a corporation ... who knowingly permit[s] the corporation to violate the provisions of RSA 275:43, 44 shall be deemed to be the employer[] of the employees of the corporation." RSA 275:42, V (Supp. 2002). The issue of "personal liability therefore turns on whether [the officer] knowingly permitted the violation" of RSA 275:43, :44 (1999). *Ives*, 126 N.H. at 803; *see also Rosenzweig v. Morton*, 144 N.H. 9, 11 (1999). In *Ives*, we stated that if the corporation acted willfully through its officer, the officer "knowingly permitted the violation so as to subject him to personal liability under RSA 275:42, V." *Ives*, 126 N.H. at 803.

The department found Richmond had responsibility for the company's day-to-day operations and knew ES lacked sufficient funds to meet the December 31 payroll. The department also found that Richmond knew of the availability of the barter dollars and computer servers to generate funds. Richmond directed ES to repay a personal loan to himself with barter dollars and knew the computer servers had value by using them to secure a loan. Thus, the department found Richmond knowingly permitted ES not to pay Hutchinson's wages. Because Richmond knowingly permitted ES to violate RSA 275:43, the department and the superior court properly found him personally liable under RSA 275:42.

*Affirmed.*

DALIANIS, J., concurred; FITZGERALD, HICKS and VAUGHAN, JJ., superior court justices, specially assigned under RSA 490:3, concurred.